**Patricia Ann LEWIS, Administratrix of the Estate of Donald Lohris Lewis; and Timothy Roy Lewis, Plaintiffs–Appellants,**

v.

**CITY OF IRVINE, KENTUCKY; and Mike Miller, Defendants–Appellees.**

No. 88–6162.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1990.

Decided March 26, 1990.

Daniel T. Taylor, III (argued), Foster V. Jones, Jr., Louisville, Ky., for plaintiffs-appellants.

Charles R. Coy, Coy, Gilbert & Gilbert, Richmond, Ky., Donald P. Moloney, II, Ogden, Sturgill & Welch, Lexington, Ky., Linda M. Hopgood (argued), Clark, Ward & Hopgood, Lexington, Ky., for defendants-appellees.

Before WELLFORD and GUY, Circuit Judges; and HULL, Chief District Judge.[*]

RALPH B. GUY, Jr., Circuit Judge.

In this 42 U.S.C. § 1983 action arising from the death of Donald Lewis, plaintiffs Patricia Ann Lewis (as administratrix of Donald Lewis's estate) and Timothy Lewis appeal from several rulings rendered by a United States magistrate.[1] First, the plaintiffs seek review of the magistrate's order granting a directed verdict in favor of the City of Irvine, Kentucky (City). Second, the plaintiffs contest the magistrate's denial of their motions for judgment notwithstanding the verdict in favor of defendant Mike Miller and for a new trial against Miller. We affirm the ruling granting a directed verdict for the City, but we reverse the denial of the motion for a new trial against Miller and remand the case for retrial under the fourth amendment excessive force standard set forth in *Graham v. Connor*, 490 U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

[*] Honorable Thomas G. Hull, Chief Judge, Eastern District of Tennessee, sitting by designation.

1. The district court referred the case to the magistrate pursuant to 28 U.S.C. § 636(c)(1), "with the parties' consent, to conduct civil proceedings and to order the entry of judgment in the case." *Howes v. United States*, 887 F.2d 729, 731 n. 5 (6th Cir.1989).

2. The ordinance in question, City of Irvine, Kentucky Ordinance No. 8–12–83, reads as follows:

AN ORDINANCE REGULATING LOITERING, PROFANE AND LOUD TALKING ON THE SIDEWALKS AND STREETS IN FRONT OF BUSINESS PLACES WITHIN THE CORPORATE LIMITS OF THE CITY OF IRVINE, KENTUCKY

"BE IT ORDAINED BY THE CITY OF IRVINE, KENTUCKY"

SECTION I. Loitering, profane and loud talking around business places within the City of Irvine, Kentucky affects the health, safety, welfare and well being of the citizens within the City of Irvine. It is hereby found and determined that such regulation must be enacted to protect the said health, safety and welfare of the people who live and work in the corporate limits of the City of Irvine; and this regulation is a matter of city wide concern over which the city must exercise the control set forth in the ordinance.

SECTION II. Definitions.

I.

In 1984, Donald Lewis leased a building in Irvine, Kentucky, which he converted into a residence for his family and a public game room including pool tables. After he opened the game room for business in downtown Irvine, local residents voiced complaints about the unruly behavior of some game room patrons. To remedy the situation, the City of Irvine adopted an ordinance "regulating loitering [and] profane and loud talking on the sidewalks and streets in front of business places within the corporate limits of the City of Irvine, Kentucky." The ordinance provided no definition for "loitering." [2]

Soon after adopting the ordinance, the City of Irvine hired Mike Miller to serve as a City police officer. The confrontation underlying this suit occurred on October 7, 1984, less than three weeks after Miller had been on the job. At approximately noon on that date, Donald Lewis was outside the family's game room sweeping the sidewalk and watching people leave the

(a) For the purpose of this ordinance, places of business as used herein shall mean any place of business.

(b) For the purpose of this ordinance, the time means twenty-four hours per day.

(c) For the purpose of this ordinance, loitering, profane and loud talking shall mean by individual and/or individuals in front of any business place within the City of Irvine, Kentucky.

SECTION III. Penalties.

(1) Any individual and/or individuals found violating any provision of this ordinance, and for which a citation is issued shall have the following penalties:

(a) On the first offense, a ($50.00) fine. Such fine shall be paid to the Irvine Police Department within seven (7) days after the citation therefore is issued. If the same is not paid within seven (7) days, the citing officer shall make a complaint to the District Court. Said violation shall constitute a misdemeanor.

On the second and any subsequent offense of this ordinance, the individual and/or individuals violating the provisions of this ordinance shall be fined ($100.00) each.

SECTION IV. Former Ordinances.

All ordinances or parts of ordinances in conflict herewith are hereby repealed.

This ordinance shall take effect from and after its passage, adoption and publication. This ordinance was passed and adopted and published according to law.

church services that had just ended. Officer Miller, who was on patrol in his police car at the time, arrived at the game room and instructed Donald Lewis and others on the sidewalk to stop loitering. Donald Lewis objected to Miller's instruction and directed Miller to contact the City's mayor to resolve the dispute regarding whether Lewis was, in fact, violating the loitering ordinance.

Miller returned to his police car to summon the mayor over his radio, and then resumed his patrol route until he was informed that the mayor was on his way to the game room. A few minutes after leaving, Miller returned to the sidewalk area in front of the game room and stepped out of his car. The sidewalk was clogged with people, including Donald Lewis and his son Tim who stood with his hands clenched in the pockets of his pants. Tim Lewis walked slowly toward Officer Miller, who in turn grabbed or hit Tim. Tim Lewis then swung at Miller, prompting Miller to draw his gun from its holster either to keep it from Tim's reach or to threaten Tim. Donald Lewis responded by grabbing for Officer Miller's arm. A struggle ensued in which Miller's gun discharged a single bullet from close range into the back of Donald Lewis's neck. Donald Lewis died instantly from the gunshot.

Patricia Lewis was appointed as administratrix of her husband's estate. She and her son Tim then filed this case against the City of Irvine and Officer Miller. Their one-count complaint alleged violations of the first, fourth, fifth, eighth, and fourteenth amendments. After extensive discovery and motion practice, the case proceeded to trial in 1988. The magistrate presiding at the trial granted the City's motion for a directed verdict at the close of the plaintiffs' case. The magistrate concluded that the City had not failed to properly train Officer Miller, and that the City's loitering ordinance—whether constitutional

or not—had no causal connection to the plaintiffs' injuries. The plaintiffs' claims against Miller were submitted to a jury, which returned a verdict in favor of Miller. When the magistrate entered judgment for Miller on the jury verdict, the plaintiffs filed a Federal Rule of Civil Procedure 50(b) motion for judgment notwithstanding the verdict. The plaintiffs alternatively requested a new trial against Miller under Federal Rule of Civil Procedure 59 based, among other reasons, upon inaccuracies in the jury instructions. The magistrate denied both motions, and this appeal followed. We shall address the issues pertaining to the City of Irvine and to Officer Miller separately.

## II.

■ The plaintiffs' claims against the City of Irvine, which were dismissed *in toto* on the City's motion for a directed verdict, encompass two basic theories—failure properly to train Officer Miller and infliction of the plaintiffs' injuries through adoption of an unconstitutional ordinance.[3] The authority to grant a directed verdict "without any assent of the jury" is provided by Federal Rule of Civil Procedure 50(a). "We review the granting of a directed verdict by the trial court under the same standard used by that court in determining whether or not it was appropriate to grant the motion." *Sawchick v. E.I. DuPont DeNemours & Co.*, 783 F.2d 635, 636 (6th Cir.1986). Thus, we must ascertain " 'whether the evidence is such, without weighing the credibility of the witnesses or considering the weight of the evidence, that there is substantial evidence from which the jury could find in favor of the party against whom the motion is made.' " *Hill v. McIntyre*, 884 F.2d 271, 274 (6th Cir.1989) (citation omitted). " 'Only when it is clear that reasonable people could come to but one conclusion from the evi-

---

**3.** The plaintiffs also sought to impose liability upon the City for "inaction such as the persistent failure to discipline subordinates who violate civil rights[,]" *see, e.g., Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983), but the magistrate correctly determined that no evidence

even intimated that the City ever condoned any misbehavior on the part of Officer Miller prior to the incident at issue. In fact, the evidence reveals no misconduct during Miller's tenure as a City of Irvine police officer predating the confrontation underlying this case.

dence should a court grant a motion for directed verdict.'" *Id.*

■ Applying the directed verdict standard, we find that the magistrate appropriately disposed of the plaintiffs' failure to train claim. In *City of Canton, Ohio v. Harris*, 489 U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court formally recognized the failure to train theory, but restricted its application to cases "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact."[4] *Id.* at ——, 109 S.Ct. at 1204. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the City, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at ——, 109 S.Ct. at 1206. "Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at ——, 109 S.Ct. at 1206. In this case, the uncontroverted evidence established that Officer Miller, who had years of experience before joining the Irvine police force, received extensive training over the course of his career. Whether that training was the best and most comprehensive available has no bearing on the plaintiffs' failure to train claim. *See id.* at ——, 109 S.Ct. at 1206. On the evidence presented in this case, reasonable jurors could only conclude that the City of Irvine's failure to train Officer Miller did not rise to the level of deliberate indifference.

■ The plaintiffs also contend that the magistrate erred in refusing to address their facial constitutional challenge to the City of Irvine's loitering ordinance and in rejecting their claim that the City's adoption of the ordinance caused their injuries. The magistrate deemed the constitutionality of the ordinance irrelevant because, in his estimation, the ordinance was not causally connected to the altercation that resulted in the plaintiffs' injuries. The magistrate appropriately reasoned that the City could not be held liable under section 1983 unless it caused the constitutional deprivation of which the plaintiffs complained. *See Harris*, 489 U.S. at ——, 109 S.Ct. at 1203. In analyzing the issue of causation, therefore, we must focus on the specific constitutional violation alleged by the plaintiffs to determine whether the City caused that particular violation. If we were to declare the loitering ordinance unconstitutional, we would do so on fourteenth amendment due process clause or first amendment grounds. Indeed, all of the cases cited by the plaintiffs in support of striking down the ordinance are first amendment or fourteenth amendment due process clause cases.[5] *See, e.g., Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90–91, 86 S.Ct. 211, 213, 15 L.Ed.2d 176 (1965). Had the plaintiffs been arrested and prosecuted under the ordinance, they might have valid section 1983 claims for violations of their first and fourteenth amendment rights.

Instead of being arrested or prosecuted, however, the plaintiffs were subjected to physical contact arguably amounting to excessive force, which must be analyzed under the fourth amendment. *See Graham v. Connor*, 490 U.S. ——, ——, 109 S.Ct.

**4.** Although the Supreme Court had not issued its opinion in *Harris* when the magistrate ruled on the City of Irvine's motion for a directed verdict, we see no need to remand the case for further consideration of the directed verdict motion under current precedent. In *Harris,* the Supreme Court vacated a decision of this court because we had applied a failure to train standard that the Court viewed as too liberal. *Harris,* 489 U.S. at ——, 109 S.Ct. at 1204. Thus, the plaintiffs' failure to train claim is subject to a *more* exacting standard on appeal than the pre-*Harris* test ostensibly applied by the magistrate.

**5.** Justice Brennan has suggested that the fourth amendment may afford a basis for striking loitering statutes, *see Kolender v. Lawson,* 461 U.S. 352, 362, 103 S.Ct. 1855, 1860, 75 L.Ed.2d 903 (1983) (Brennan, J., concurring), but he admitted that such an approach would be novel. *See id.* at 362 n. 1, 103 S.Ct. at 1861 n. 1. The *Kolender* majority's limitation of its opinion to more traditional constitutional arguments illustrates the Court's reluctance to characterize constitutional issues raised by loitering statutes as matters of fourth amendment concern.

1865, 1871, 104 L.Ed.2d 443 (1989). The ordinance's causal relationship to such a fourth amendment claim (as opposed to a first amendment or fourteenth amendment claim) is too attenuated to support municipal liability based strictly upon the City of Irvine's formal proscription of loitering. The Supreme Court explained in *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), that "there must be an affirmative link between the policy and the particular constitutional violation alleged" in order to sustain municipal liability. *Id.* at 823, 105 S.Ct. at 2436. Here, the alleged fourth amendment violation is only linked to the ordinance in the broad sense that Officer Miller initially approached Donald Lewis to obtain Lewis's compliance with the ordinance. That the encounter would so significantly degenerate from a demand for compliance with the ordinance can hardly be described as foreseeable. Thus, we find that the constitutionality of the ordinance is irrelevant insofar as the plaintiffs' excessive force claim is concerned. The magistrate's refusal to rule on the constitutionality of the ordinance and his subsequent decision to grant a directed verdict for the City of Irvine were not erroneous.

### III.

■ The plaintiffs' appeal concerning their excessive force claim against Officer Miller focuses upon the instructions given to the jury. The plaintiffs contend that the magistrate should have granted their Federal Rule of Civil Procedure 59 motion for a new trial because the charge contained inaccurate legal standards. We have explained that "[a] party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Bowman v. Koch Transfer Co.*, 862

F.2d 1257, 1263 (6th Cir.1988). Because the instructions in this case contained several material misstatements of the applicable law, we must reverse the denial of plaintiffs' Rule 59 motion and remand the plaintiffs' claim against Officer Miller for a new trial.[6]

■ The jury instructions regarding the plaintiffs' excessive force claim against Officer Miller improperly framed the issue in fourteenth amendment substantive due process phraseology that the Supreme Court expressly rejected in *Graham*, 490 U.S. ——, 109 S.Ct. 1865. Specifically, the jury was instructed to consider "whether force was applied in [a] good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Although we once characterized allegations of excessive force as fourteenth amendment substantive due process claims, *see, e.g., Lewis v. Downs*, 774 F.2d 711, 713 (6th Cir.1985), we ultimately eschewed a substantive due process approach to excessive force claims in favor of a fourth amendment analysis in *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir.1988). Soon thereafter, the Supreme Court ruled that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at ——, 109 S.Ct. at 1871. Moreover, the Court in *Graham* rejected the Fourth Circuit's excessive force standard, which premised liability upon whether police officers acted " 'maliciously and sadistically for the very purpose of causing harm[.]' " *Id.* at ——, 109 S.Ct. at 1872. Because the language employed by the magistrate in this case precisely tracks the standard that the Supreme Court repudiat-

---

6. Because the proceedings were conducted on the erroneous assumption that the plaintiffs' excessive force claim amounted to an allegation of a substantive due process violation, the magistrate could not possibly have considered the plaintiffs' motion for judgment notwithstanding the verdict under the appropriate fourth amend-

ment standard. Thus, we should not weigh the merits of the plaintiffs' JNOV motion under the completely different substantive standard defined in *Graham* for the first time on appeal. The proper course is simply to remand the case for retrial.

ed in *Graham,* we conclude that the jury was improperly instructed with respect to the plaintiffs' excessive force claim against Officer Miller.[7] This fact alone affords ample justification for ordering a new trial as to the claim against Officer Miller.

■ The use of an incorrect substantive due process standard is not the only fundamental flaw in the magistrate's charge to the jury. The instructions repeatedly refer to Officer Miller's state of mind—a factor that has no relevance in the constitutional excessive force inquiry. Our decision in *Holt v. Artis,* 843 F.2d 242 (6th Cir.1988), clearly indicates that a police officer's subjective good faith has no bearing on the existence or absence of a constitutional violation for the use of excessive force. *Id.* at 245–46. Likewise, the Supreme Court's decision in *Graham* expressly states that a "test which requires consideration of whether the individual officers acted in 'good faith' ... is incompatible with a proper fourth amendment analysis." *Graham,* 490 U.S. at ——, 109 S.Ct. at 1872. Instead, "the inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at ——, 109 S.Ct. at 1872. Because the instructions in this case introduced inappropriate state of mind factors and also employed an incorrect legal standard, a new trial is necessary to properly resolve the plaintiffs' excessive force claim against Officer Miller. Accordingly, the judgment in favor of Officer Miller is VACATED, and the plaintiffs' excessive force claim against Miller is REMANDED for a new trial.

---

7. The plaintiffs preserved this issue for appellate review by objecting to the magistrate's omission of a proper fourth amendment instruction. Although the instructions refer generally to the fourth amendment in addition to the fourteenth amendment, the charge is devoid of any fourth amendment "objective reasonableness" language.