936 F.2d 573
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Emma Sue NANCE, individually and as administratrix of the
estate of David Lee Nance, Plaintiff-Appellant,
v.
S. GRIFFIN, individually and in his official capacity, et
al., Defendants-Appellees.
 No. 89-5808.
 United States Court of Appeals, Sixth Circuit.
 July 3, 1991.
 
 Before RALPH B. GUY, Jr. and DAVID A. NELSON, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 In this 42 U.S.C. Sec. 1983 action concerning the jail suicide of pretrial detainee David Lee Nance, plaintiff Emma Sue Nance, David Nance's mother and the administratrix of his estate, appeals from a district court order granting summary judgment for defendant City of Knoxville, Tennessee.[1] The plaintiff further contests the district court's denial of her post-judgment motion to amend her complaint to plead a cause of action for negligence under Tennessee law. Because we find that the plaintiff has failed to establish a constitutional violation, we affirm the order granting summary judgment for the City of Knoxville on plaintiff Nance's section 1983 claims. Since the district court could not exercise subject-matter jurisdiction over the plaintiff's proposed negligence claim absent a viable federal claim, we affirm the district court's order denying the plaintiff leave to amend her complaint.
 
 I.
 
 2
 On December 19, 1985, Knoxville police officers were summoned to a gas station where David Nance was "acting in a bizarre manner, stripping his clothes off, swinging his arms about wildly, not responding to those talking to him, [and] banging on his car[.]" (App. at 7). Knoxville city police officers Steven Griffin, Greg Dyke, and Steve Cianciola arrived at the gas station in response to the call, subdued and arrested Nance for disorderly conduct, resisting arrest, and attempted assault, and then transported him to the Knoxville City Jail. When David Nance was taken to the jail, Emma Sue Nance informed the arresting officers and jail officials that David had been in a mental hospital and requested that he be sent to the Veteran's Administration Hospital in Johnson City, Tennessee. Jail officials refused this request.
 
 
 3
 Bridgette Ann Patterson, a licensed practical nurse working at the city jail, saw David Nance on the morning of December 20, 1985. In response to information she received from night shift workers that Nance "had a mental problem" (App. at 568), Patterson called Knox County Mental Health Office coordinator Anne Edens. Edens examined Nance at the city jail on December 20, 1985, to make a preliminary assessment of his psychiatric needs. Edens ascertained that Nance exhibited delusional-paranoid tendencies, and indicated that he required further examination regarding hospitalization for his psychiatric condition. On the same day, Judge Creekmore of the Knox County General Sessions Court ordered a forensic evaluation, rather than a civil commitment evaluation, to determine Nance's competency to stand trial and the possiblity of insanity at the time of the charged offenses. (App. at 245). By the terms of the order, Helen Ross-McNabb Center personnel were to perform the evaluation at the city jail and then provide a report to the court by December 30, 1985.
 
 
 4
 City jail doctor Dennis Drake examined David Nance on December 23, 1985, but Nance largely refused to cooperate in the examination process. Nance did tell Dr. Drake of his stay in a psychiatric hospital, however, and Nance's medical chart further revealed to Dr. Drake that Nance previously had received psychiatric hospitalization on ten occasions. (App. at 582). When nurse Patterson called the Knox County Mental Health Center on December 23, 1985, she discovered that the center had no order regarding a mental health evaluation for Nance. Thus, in response to a telephone inquiry, Patterson told Emma Sue Nance that she should "make bond and make arrangements for [David] to go" to a mental health facility of her choice because the jail was powerless to take such action concerning psychiatric treatment without a court order. (App. at 606). Despite repeated calls from the jail, Helen Ross-McNabb Center personnel apparently failed to act promptly on the court order for a forensic examination of David Nance. However, Patterson did talk with David Nance at the city jail on December 24, 1985, and again on December 29, 1985, to check on his condition; she found his behavior relatively normal and of no problem to anyone. (App. at 595).
 
 
 5
 After David Nance had been detained in the city jail for more than a week, a "trustee" handing out bed sheets gave one to Nance.[2] (App. at 150, 178, 229, 528). Nance hanged himself in his cell at approximately 3:50 a.m. on the morning of December 30, 1985, by using the sheet he obtained from the trustee. While making routine 4:00 a.m. rounds, jailer Marlon Goolsby found Nance hanging in his cell. (App. at 158). Goolsby summoned two other jailers who eventually opened the lock on the cell door that Nance apparently had jammed with plastic. The jailers immediately cut the sheet and called an ambulance, but Nance could not be revived.
 
 
 6
 On August 15, 1986, plaintiff Emma Sue Nance filed suit on her own behalf and as administratrix of David Nance's estate. (App. at 5). Her complaint, which alleged purely federal claims, named as defendants the three officers who arrested David Nance, the City of Knoxville, and several Doe defendants identified only as police officers and jail employees. Four individuals identifying themselves as the Doe defendants successfully moved for summary judgment in 1987, thereby ostensibly leaving only the arresting officers and the City of Knoxville as defendants in the action. All four remaining defendants filed motions for summary judgment on August 8, 1988. The plaintiff failed to respond directly to the motions,[3] and the district court granted summary judgment with respect to all four defendants on September 6, 1988. (App. at 29-31). The plaintiff then moved to set aside the judgment in light of newly discovered information regarding the jail suicide. On October 14, 1988, the district court denied the plaintiff's motion with respect to the arresting officers,[4] but granted the motion with respect to the City of Knoxville.
 
 
 7
 After further discovery, the City of Knoxville renewed its motion for summary judgment on March 1, 1989, and the plaintiff filed a timely response to the motion. The district court issued a memorandum opinion and order granting the City of Knoxville's motion for summary judgment on March 31, 1989. The district court determined that, although the plaintiff had established a negligence claim, the record could not support any claim of constitutional dimension. The plaintiff then filed a motion on April 10, 1989, seeking leave to amend her complaint to include a state law negligence claim. The district court denied the plaintiff's motion to amend on May 26, 1988, and this appeal followed.
 
 
 8
 Plaintiff argues on appeal that the district court erred in ruling that she failed to demonstrate a constitutional violation by the City. In addition, the plaintiff challenges the district court's denial of her post-judgment motion to amend her complaint. We shall initially address the plaintiff's alleged constitutional claims, and then consider her attempt to assert a state law claim following the entry of judgment.
 
 II.
 
 9
 Plaintiff's cause of action against the City is predicated upon her contention that the City failed to properly train its personnel. "In City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court formally recognized the failure to train theory, but restricted its application to cases 'where the failure to train amounts to deliberate indifference to rights of persons with whom the police come in contact.' " Lewis v. City of Irvine, Kentucky, 899 F.2d 451, 455 (6th Cir.1990) (quoting Harris, 489 U.S. at 388, 109 S.Ct. at 1204). Similarly, in Molton v. City of Cleveland, 839 F.2d 240 (6th Cir.1988), we explained that "[a] pretrial detainee's constitutional rights under the eighth and fourteenth amendments are denied by deliberate indifference to his serious medical needs...." Id. at 243. Thus, the plaintiff's failure to train and eighth amendment claims both must be measured against the deliberate indifference standard.
 
 A.
 
 10
 The plaintiff first contends that the City of Knoxville failed to adequately train its employees to anticipate and prevent suicides. Under the governing standard, however, the City of Knoxville can be held responsible for David Nance's death only if its "failure to train reflects a 'deliberate' or 'conscious' choice...." Harris, 489 U.S. at 389. In this case, Randal Lockmiller, the city jail supervisor at the time of Nance's confinement, indicated at his deposition that, during his tenure, all jail employees received at least 40 hours per year of training from the Tennessee Corrections Institute (TCI) and 40 additional hours of training by the City of Knoxville Police Department. (App. at 395). Lockmiller further stated that some employees supplemented these 80 hours of annual training with courses offered by outside agencies. According to Lockmiller, the standard training courses included a four-hour session focusing exclusively on psychology and jail stress. (App. at 392). In sum, the training provided to Knoxville City Jail personnel was far more substantial than the program that we found constitutionally acceptable in Beddingfield v. City of Pulaski, Tennessee, 861 F.2d 968, 971-72 (6th Cir.1988). We commented in Beddingfield that the City's decision to exclude its jail personnel from TCI training did not amount to a constitutionally impermissible failure to train "because the City provided its own in-house training program." Id. at 971. Here, Knoxville City Jail personnel were given both in-house and TCI training. Accordingly, the training received by city jail personnel was clearly adequate by constitutional standards; "[t]he need for specific training in suicide prevention beyond what the [employees] received ... is not 'so obvious' that the city's policy may be characterized as 'deliberately indifferent.' " Dorman v. District of Columbia, 888 F.2d 159, 164 (D.C.Cir.1989) (applying Harris ).
 
 
 11
 The plaintiff further argues that the City's training was inadequate or flawed with respect to use and supervision of trustees. The city jail's policy and procedure manual contemplates the selection of trustees by the supervisor or senior officer on duty (App. at 92), but trustees' responsibilities are explicitly limited to ministerial tasks performed under the supervision of jail personnel. (App. at 104, 522). Jail supervisor Lockmiller opined that "it was an accident on the part of the trustees" to give Nance a sheet. (App. at 520). The district court correctly characterized the poor supervision of the trustees passing out sheets as negligent (App. at 541), but concluded that the City's failure to thoroughly train all employees in the precise methods for handling trustees did not amount to deliberate indifference. (App. at 539-40). The plaintiff has offered no evidence or explanation to support the contention that inadequate training in the handling of trustees commensurate with "deliberate indifference" occurred. Instead, the plaintiff has established a negligent deviation from the clear directive limiting the use of trustees. This showing is insufficient to support a failure to train claim. See Beddingfield, 861 F.2d at 972.
 
 B.
 
 12
 The plaintiff's eighth amendment claim for improper treatment of David Nance's psychiatric condition requires us to apply Estelle v. Gamble, 429 U.S. 97 (1976), a decision in which the Supreme Court recognized a cause of action for "deliberate indifference to serious medical needs of prisoners...." Id. at 104. We have specifically explained how this cause of action applies to jail suicides:
 
 
 13
 [I]n a Sec. 1983 action against a city for failing to prevent the suicide of a pre-trial detainee, a plaintiff must prove deliberate indifference; and that deliberate indifference constitutes the purposeful punishment necessary for finding a fourteenth amendment violation. We specifically rejected the contention that such an action could be maintained on a theory of mere negligence. The conduct for which liability attaches must be more than negligence, it must demonstrate deliberateness tantamount to an intent to punish.
 
 
 14
 Molton, 839 F.2d at 243 (citation omitted). Under this standard, the plaintiff clearly cannot establish an eighth amendment violation with respect to David Nance's treatment or his subsequent suicide. In less than two weeks of confinement, Nance received medical attention on numerous occasions from nurse Patterson, he was examined by Dr. Drake, and Anne Edens performed a psychological evaluation of Nance soon after he arrived at the city jail. Moreover, he was scheduled for a forensic examination on or before December 30, 1985, and jail personnel repeatedly contacted the Helen Ross-McNabb Center to hasten the examination process. Any inadequacies in David Nance's care and treatment cannot be attributed to the City of Knoxville. Thus, the entry of summary judgment on the plaintiff's eighth amendment claim was entirely appropriate.
 
 III.
 
 15
 Our decision concerning the City of Knoxville's summary judgment motion mandates denial of the plaintiff's post-judgment request for leave to amend. Dismissal without prejudice of pendent claims generally is required once all federal claims are dismissed. See, e.g., Service, Hosp., Nursing Home and Pub. Employees Union, Local No. 47 v. Commercial Property Serv., Inc., 755 F.2d 499, 506 & n. 9 (6th Cir.1985). Here, the plaintiff seeks to plead a state law negligence claim following the dismissal of all federal claims. Since dismissal of such a claim would be necessary under Commercial Property even if the cause of action had been set forth in the plaintiff's original complaint, see id., we cannot permit post-judgment amendment to state such a cause of action in the absence of a viable federal claim.
 
 
 16
 AFFIRMED.
 
 
 17
 GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, dissenting.
 
 
 18
 The plaintiff appeals from the dismissal of her suit against the city of Knoxville for failure to take the necessary steps to prevent her son's suicide while he was held in the city jail. There is no question that the young man was totally irrational at the time, and, in need of treatment for his mental condition. In my view, this case should not have been decided on summary judgment without a hearing or trial and I vote to send it back for trial.
 
 
 
 [1]
 Although the plaintiff originally named a host of city police officers and jail workers as defendants, her contentions on appeal focus solely upon her claims against the City of Knoxville. Accordingly, we need not consider the propriety of the district court's orders granting summary judgment for the various individual defendants
 
 
 [2]
 The term "trustee" generally refers to an inmate given the responsibility of performing carefully defined tasks in a jail or prison
 
 
 [3]
 The plaintiff did seek a continuance, but the district court rejected the motion because "[t]his action has already been continued four times, testing the patience of the defendants and the Court." (App. at 29-30)
 
 
 [4]
 The district court correctly observed that the new information concerning the jail suicide had no bearing upon the plaintiff's section 1983 claim to redress alleged fourth amendment violations committed by the arresting officers