972 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lisa Ann RICHMOND, Plaintiff-Appellant,
Wanda Kay Rush; Elsie Bartee, Individually and on behalf of
all others similarly situated in plaintiff's class
# 1 and # 2; Brenda Green; and Allie
Rodriguez, Plaintiffs,
v.
BRISTOL TENNESSEE HOUSING AUTHORITY; Larry Carter,
Individually and in his official capacity as Executive
Director of Bristol Tennessee Housing Authority; Charles L.
Hager; Nell Whitt; Charles F. Forbush; and Ward
Huddleston, Individually and in their official capacities as
Board Members of Bristol Tennessee Housing Authority,
Defendants-Appellees
United States Department of Housing and Urban Development;
and Jack Kemp, Secretary of the United States
Department of Housing and Urban
Development, Defendants.
 No. 90-6487.
 United States Court of Appeals, Sixth Circuit.
 July 29, 1992.
 
 Before BOGGS and ALAN E. NORRIS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Lisa Ann Richmond appeals the district court's grant of a directed verdict against her in this case. She also appeals the district court's denial of her motion for class certification and her motion to reinstate the United States Department of Housing and Urban Development as a defendant in this matter. Finally, she challenges the district court's grant of the defendants' motion in limine to exclude the testimony of the plaintiffs' witness Ann Watson. For the reasons that follow, we affirm the judgment of the district court.
 
 
 2
 * The plaintiffs in the case were applicants for and tenants of public housing operated by the Bristol Tennessee Housing Authority ("BTHA"). They filed this case as two class actions. One class was to consist of black applicants and tenants of public housing seeking relief from racial discrimination and segregation under the Fair Housing Act of Title VII, 42 U.S.C. § 3601 et seq.; 42 U.S.C. §§ 1981, 1982, 1983; 42 U.S.C. § 2000(d) of Title VI of the Civil Rights Act of 1964; and the fifth, thirteenth and fourteenth amendments to the United States Constitution. This class was represented by Lisa Ann Richmond, Allie Rodriguez, and Brenda Green. Green subsequently dismissed her complaint. Richmond and Rodriguez sought declaratory and injunctive relief to desegregate the BTHA. The district court refused to certify this class. Richmond also sought individual damages for racial discrimination against her in the processing of her application.
 
 
 3
 The other class in this case was to consist of applicants for public housing with very low incomes who have been or will be skipped over in favor of applicants with higher incomes. This class was represented by Wanda K. Rush, Elsie Bartie, Robin James, and Nancy Musick. The class sought declaratory and injunctive relief requiring BTHA to comply with § 42 U.S.C. 1407 et seq. and to discontinue the policy of "rent ranges" that allegedly allows the exclusion of low-income applicants. The district court also refused to certify this class.
 
 
 4
 Defendants in this action included the BTHA; Larry Carter, executive director of the BTHA; the Board Members of the BTHA; and the United States Department of Housing and Urban Development. However, the plaintiffs voluntarily dismissed HUD on March 7, 1989.
 
 
 5
 The plaintiffs appealed the following actions of the district court: (1) denial of plaintiffs' motions for class certification; (2) grant of defendants' motion in limine to exclude the testimony of Ann Watson; (3) denial of plaintiffs' motion to reinstate HUD as defendant; (4) grant of a directed verdict against plaintiff Lisa Richmond because she lacked standing. By order of the Clerk of the Sixth Circuit, Lisa Richmond was the only recognized appellant because the names of the other plaintiffs were not part of the notice of appeal. Minority Employees v. Tennessee, 901 F.2d 1327 (6th Cir.) (en banc), cert. denied, 111 S.Ct. 210 (1990).
 
 
 6
 On May 10, 1991, this court issued an order denying plaintiffs' motion to recognize additional appellants. Richmond presents this court with all four of the assignments of error listed above. We address each of these issues in turn below.
 
 II
 
 7
 We first consider the district court's grant of a directed verdict against Richmond. We review a grant of a directed verdict under the same standard employed by the district court. Marsh v. Arn, 937 F.2d 1056, 1060 (6th Cir.1991). When reviewing a motion for a directed verdict, the court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury. Rather, the court must view the evidence in a light most favorable to the non-moving party and give that party the benefit of all reasonable inferences. Lewis v. City of Irvine, Ky., 899 F.2d 451, 454-55 (6th Cir.1990). The motion should be granted "if there is a complete absence of pleading or proof on an issue or issues material to the cause of action or where there are no controversial issues of fact upon which reasonable men could differ." Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1015 (6th Cir.1987) (quoting Rockwell Int'l Corp. v. Regional Emerg. Med. Serv. of Northwest Ohio, Inc., 688 F.2d 29, 31 (6th Cir.1982)).
 
 
 8
 The district court granted a directed verdict in this case based on Jaimes v. Toledo Metro. Hous. Auth., 758 F.2d 1086 (6th Cir.1985). In Jaimes, the court held that there can be no cause of action absent standing to assert a claim, regardless of the validity of the claim. Id. at 1092. In order to establish standing in the constitutional sense, a party must allege and prove a distinct and palpable injury, causally related to the complained of conduct, and a substantial probability that the claimed injury will be redressed by taking action sought by claimants. Id. at 1093.
 
 
 9
 In regard to the low-income plaintiffs' cause of action, it was undisputed that no plaintiff had yet been skipped over in favor of less senior, higher income applicants. Plaintiffs merely contend that they might in the future be skipped over as a result of existing policies of the BTHA. For this reason, the district court correctly held that these plaintiffs did not have standing. In any event, Richmond cannot challenge this ruling since her claims were based only on theories of racial discrimination.
 
 
 10
 With regard to the racial discrimination claims, the district court also found, after hearing the plaintiffs' case, that racial discrimination had nothing to do with the problems Ms. Richmond encountered in the filing of her application. Apparently, Richmond filed an application with the Housing Authority in 1982. She called periodically to check on her application and, in 1985, she was told she had to reapply. The evidence shows that Richmond never reapplied, although she contends that she did. She admits that she made no further contacts with the Authority until 1989. The district court held that although her initial application may have slipped through the cracks, it was not as a result of racial discrimination. The applications of several other black applicants were processed and accepted during that time. Further, the court found that although there are areas of public housing in Bristol that are predominantly black, this was not the result of racial discrimination.
 
 
 11
 In short, Richmond presented no real evidence supporting her claim that she was initially denied housing based on her race, aside from the fact that she had to wait for housing in the precise location that she desired. The district court held that she quite clearly fails to meet the second requirement of standing in the constitutional sense because she has not established a traceable causal connection between her alleged injury and any illegal conduct on the part of the defendants. Jaimes, 758 F.2d at 1093, citing Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59 (1978). The issue of constitutional standing is somewhat complex and, in this case, there is no real reason to address it. We hold that, regardless of the standing issue, the defendants are entitled to a directed verdict because Richmond has failed to present sufficient evidence to create a question of fact on a material issue in this case. There is simply no evidence that the BTHA engaged in racially discriminatory treatment of Richmond when it processed her application. No rational juror could find otherwise, and therefore the district court was correct in granting a directed verdict.
 
 
 12
 Finally, Richmond argues that the district court erred in dismissing the portion of her claim founded on the alleged racial segregation in the BTHA. Richmond argues that the district court failed to recognize that racial segregation itself is the injury in this case. Further, she argues that it is well established that applicants and tenants of public housing have standing to make claims that racial segregation in existing housing projects violates their statutory and constitutional rights. Jaimes v. Toledo Metro. Hous. Auth., 758 F.2d 1086 (6th Cir.1985); Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205 (1972). BTHA argues that there is no segregation in this case, but merely some racial concentrations that have resulted from the choices of applicants and not because of discrimination on the part of the BTHA.
 
 
 13
 Again, putting aside the constitutional standing issue, Richmond has not presented enough evidence to overcome a directed verdict against her on this claim in any event. First, in order to establish a constitutional violation, Richmond must prove discriminatory intent on the part of the BTHA. Washington v. Davis, 426 U.S. 229, 242 (1976); Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 268-71 (1977). In addition, Richmond makes several statutory claims. First, she claims that alleged segregation in the BTHA violates the Fair Housing Act, enacted as Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 et seq. The Fair Housing Act makes it unlawful for any person to refuse to sell or otherwise make available a dwelling to any person because of race. She also asserts violations of 42 U.S.C. §§ 1981 and 1982. The courts have uniformly held that a plaintiff establishes a prima facie case under any of these statutes by proving:
 
 
 14
 (1) That he or she is a member of a racial minority;
 
 
 15
 (2) That he or she applied for and was qualified to rent or purchase certain property or housing;
 
 
 16
 (3) That he or she was rejected;
 
 
 17
 (4) That the housing or rental property remained available thereafter.
 
 
 18
 Selden Apartments v. United States Dep't of Hous. and Urban Dev., 785 F.2d 152, 159 (6th Cir.1986).
 
 
 19
 The BTHA maintains family housing projects with 144 units. These units are contained in 67 buildings spread over four non-contiguous "scattered sites." These scattered sites are all located within one-quarter of the city's area. One such site was located on East State Street, which is a mixed-race neighborhood. The site contains nine units. Six are occupied by black families, three by white families. Another site, relatively far from downtown Bristol, is located on Virginia, Kentucky, and Carolina Avenues. The site contains 80 units. One is occupied by a black family. A third site is located on Fifth Street and College Avenue. This site contains 21 units, six of which are occupied by black families. Finally, a site on Edgemont Avenue and Ash Street consists of 34 units, with two units occupied by black families.
 
 
 20
 The plaintiffs' expert witness, a sociologist, testified that, based on a measure known as the Index of Dissimilarity, there was an uneven distribution of blacks in the BTHA. The expert concluded that segregation existed in the housing projects. The expert, however, could not point to any policy, action, or practice by the BTHA that resulted in this uneven distribution.
 
 
 21
 The plaintiffs' expert suggested that in order to achieve an even racial distribution, some of the black tenants on East State Street would be required to relocate to the housing on Virginia, Kentucky, and Carolina Avenues. However, far from creating this uneven distribution, the BTHA and its management have already attempted to institute the expert witness's suggestion on their own. In August 1987, the BTHA offered six of the black families on East State Street the opportunity to relocate. None of them accepted the offer. In fact, all of the black tenants at East State Street had specifically requested the site and did not want to live anywhere else. Further, the BTHA began placing white families in the East State Street units as those units became available. Prior to Richmond's claim, no black tenant of the BTHA has ever complained of discrimination or segregation.
 
 
 22
 All of this uncontested evidence illustrates that, to the extent there may be an uneven distribution of blacks in the BTHA, it was not caused by any action, policy, or practice of the BTHA. No evidence to the contrary was presented by the plaintiffs. The BTHA maintains a waiting list and, as units open up, it offers the units to those on the list in order of priority. Those on the list may accept the unit or wait for another location. Race is not a factor in offering units or selecting tenants. In fact, Richmond herself was offered the first available four-bedroom unit, which happened to be on Virginia Avenue, in September 1989. She did not respond for several months, but ultimately rejected the unit in January 1990. She chose to wait for a unit on College Avenue or Fifth Street, closer to her mother's house. In February 1990, she was offered and she accepted a suitable unit on Fifth Street and has been a tenant ever since.
 
 
 23
 In short, Richmond has not presented sufficient evidence to support her claim that the BTHA discriminates. She has not established her prima facie burden of proof under her statutory causes of action. Further, she has certainly not presented proof that even approaches the level required to establish a constitutional violation. Any uneven distribution that may exist is not the result of any action on the part of the BTHA, but results from the private choices made by the tenants. Contrary to Richmond's assertions, the BTHA has itself attempted to remedy any existing racial disparities among the various sites. We hold that the district court's grant of a directed verdict in favor of the defendants on the segregation claim was proper because there was insufficient evidence to create a genuine issue of fact that would support the claim before a jury.
 
 III
 
 24
 Next, Richmond contends that the district court erred when it denied her motion to certify a class containing those present, past, and future black applicants who have been discriminated against by the BTHA. The district court denied the motion for class certification because the terms of the class definition would have required the court to determine the merits of each person's claim before that person could be included in the class. Therefore, the court held that the definition of the class was not sufficiently definite. The plaintiffs then rephrased the class definition as those black applicants whose applications were passed over in favor of white applicants and those tenants who have lived, live, or will live in the racially segregated portions of the BTHA. Alternatively, the plaintiff also suggested defining the class as all past, present, or future black applicants for public housing. The district court again denied certification for failure to define an identifiable class that would be entitled to damages under plaintiffs' theories.
 
 
 25
 As stated above, Richmond is the only appellant in this case. There was no mention of any class in the notice of appeal. We are thus unable to consider this issue. We have addressed the questions that Richardson raises individually and found that the defendants were entitled to a directed verdict. We cannot consider the claim that any of the other actual or potential plaintiffs, who are not part of this appeal, were wrongfully denied the opportunity to be part of a class action in this case.
 
 IV
 
 26
 The next issue is the denial of the motion to amend the complaint to bring HUD and Secretary Jack Kemp back into this lawsuit as defendants. A district court's decision denying leave to amend is reviewed under the abuse of discretion standard. Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330 (1971). The plaintiffs voluntarily dismissed HUD and Kemp on March 6, 1989. The plaintiffs later made several motions to amend to add more plaintiffs and to drop another defendant. The final pretrial order was filed November 4, 1989, and trial was scheduled to begin on February 26, 1990. On November 20, 1989, plaintiffs filed their motion to reintroduce HUD and Kemp as defendants. The court denied the motion to amend because the allegations were conclusory, and the plaintiffs gave no real reason for adding the previously dismissed defendants so close to the trial date. Two weeks later plaintiffs moved for a continuance, which was granted. Plaintiffs never again requested, however, that HUD be added as a defendant. Plaintiffs claim that they sought to bring HUD back in as a defendant when it became clear that the suit was not going to settle. In any event, we find that the district court did not abuse its discretion in refusing to allow the amendment, given the circumstances of this case.
 
 V
 
 27
 Finally, plaintiffs challenge the court's decision to exclude the testimony of Ann Watson, a former employee of the BTHA. Plaintiffs claim that her testimony would have established that the BTHA used a secret racial code for processing applicants and had a policy of segregation. However, Watson testified at her deposition that she had no knowledge of any practice or procedure after 1978, when she left the employ of BTHA. The issues for trial were whether the BTHA discriminated against the plaintiff and whether the BTHA was presently segregated. The court determined that Watson's testimony would have been irrelevant. Plaintiff argues that Watson's testimony would have been relevant to establish a pattern of behavior on the part of BTHA. The trial judge has broad discretion in determining relevance and the district court did not abuse its discretion here.
 
 VI
 
 28
 For the reasons given, we AFFIRM the judgment of the district court.