999 F.2d 540
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Harold C. HODSON, Plaintiff/Appellee,
v.
DURHAM LIFE INSURANCE CO., Defendant/Appellant.
 No. 92-3457.
 United States Court of Appeals, Sixth Circuit.
 July 22, 1993.
 
 Before MILBURN and RYAN, Circuit Judges, and COFFIN, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Defendant Durham Life Insurance Co. (Durham) appeals from a $500,000 judgment in favor of plaintiff Harold C. Hodson for breach of contract. Durham contends that the evidence presented to the jury was insufficient to support the finding of a lifetime agency agreement between the parties, that an erroneous jury instruction influenced this finding, and that the evidence was insufficient to support the award of damages. We affirm.
 
 I.
 
 2
 Hodson was an insurance agent involved in the sales and administration of group health and hospitalization insurance policies. By 1985, the insurance agency he owned, Benefit Plans, Inc. (BPI), was generating approximately $18,000,000 in annual premiums for Durham, which underwrote the policies BPI sold. Of the 350 to 400 agents affiliated with BPI, Hodson was the largest producer, with a caseload exceeding that of his nearest competitor by 150 cases.
 
 
 3
 As Hodson neared retirement, he decided to sell his business. On October 15, 1985, Durham purchased BPI from Hodson for $10,000,000. Three separate agreements memorialized the transaction: a purchase agreement; a consulting agreement that, inter alia, required Hodson not to compete with BPI for three years; and a commission agreement by which Hodson remained an agent of Durham and was to receive commissions for his past and future sales. The third agreement is the subject of this dispute.
 
 
 4
 In October 1988, upon the expiration of his non-competition agreement, Hodson formed a new corporation to sell and administer group health insurance policies. Based on activities connected with the formation of this new agency and Hodson's drop in sales for BPI, Durham unilaterally terminated Hodson's commission agreement, effective January 31, 1989.
 
 
 5
 Hodson sued Durham for breaching the commission agreement. He claimed that the agreement was a contract for life, which could not be terminated either with or without cause. Durham countered that the agreement created an employment-at-will and that it had cause to terminate the agreement.
 
 
 6
 Following a four-day trial, the jury returned a special verdict in which it found that the parties had entered a lifetime contract and that Hodson was entitled to $500,000 in damages. Durham moved for judgment as a matter of law or, in the alternative, for a new trial. The district court denied the motion. This appeal followed.
 
 II.
 
 7
 Durham contends that the district court erred in denying the motion for judgment as a matter of law. We review the denial of the motion pursuant to the same standard used by the district court. Littlejohn v. Rose, 768 F.2d 765, 770 (6th Cir.1985). Accordingly, after construing the evidence in the light most favorable to the non-movant, we must determine whether judgment against the non-movant is the only reasonable outcome. Toth v. Yoder Co., 749 F.2d 1190, 1194 (6th Cir.1984). We do not take into consideration the weight of the evidence or the credibility of the witnesses. Lewis v. City of Irvine, 899 F.2d 451, 454 (6th Cir.1990).
 
 
 8
 Durham asserts that the commission agreement did not form a lifetime contract. Longstanding Ohio law holds that a contract silent as to duration is presumed to create an employment at-will. Mers v. Dispatch Printing Co., 19 Ohio St.3d 100, 483 N.E.2d 150, 154 (1985); Henkel v. Educational Research Council, 45 Ohio St.2d 249, 344 N.E.2d 118, 119 (1976) (collecting cases). The commission agreement did not specify a term of employment. Thus, unless Hodson demonstrated facts and circumstances that indicate an agreement regarding the term of employment, his employment was at-will. See Henkel, 483 N.E.2d at 119. Durham contends that Hodson did not adduce evidence sufficient to overcome the presumption of an at-will contract.
 
 
 9
 The district court disagreed. In a thorough opinion, the court assembled the evidence, viewed in the light most favorable to Hodson, that sustained the finding of a lifetime commission agreement. We recapitulate the facts briefly.
 
 
 10
 The negotiations between Hodson and Durham support the inference that they intended to form a lifetime contract. Hodson steadfastly refused to sign earlier drafts of the commission agreement that provided for termination with or without cause. Hodson testified that he had refused because, with the inclusion of a termination clause, "[y]ou might as well not have one [a contract]." Tr. Vol. I at 182. The final version, which he drafted, did not contain a termination provision.
 
 
 11
 Hodson also did not sign the Standard Producer's Agreement, which governed the employment of other Durham agents and contained a termination clause. Hodson explained that he:
 
 
 12
 was the originator of this whole thing, and [he] had a lot of business and [he] felt [he] should be treated as such, and [he] felt [he] did have a special contract because [he] was a special person and had that right and they [Durham] agreed to that.
 
 
 13
 Id. at 181-82. The jury reasonably could infer that Durham agreed that Hodson deserved special consideration for his success in building BPI and, therefore, provided him a lifetime commission agreement.
 
 
 14
 The terms of the commission agreement also advance Hodson's contention that it was intended to last throughout his lifetime. The agreement entitled Hodson's estate to receive the next 12 months' commissions if, upon his death, his monthly commissions exceeded $1,000. The agreement did not condition these payments upon Hodson's being employed at his death. As the district court noted, the provision of these death benefits was anomalous if the contract was at-will, for "any number of circumstances might arise in which termination would occur before death." Opinion and Order, May 1, 1992, at 8. The jury thus could infer that the agreement provided for compensation to Hodson throughout his life plus 12 months.
 
 
 15
 Under these circumstances, the evidence did not lead ineluctably to a verdict against Hodson. To the contrary, ample evidence supports the jury's finding of a lifetime contract and Durham's breach thereof.[1] The district court, therefore, did not err in denying Durham's motion for judgment as a matter of law.[2]
 
 III.
 
 16
 In the alternative, Durham contends that the district court should have granted a new trial because Durham was prejudiced by an erroneous jury instruction. A district court may deny such a motion for new trial unless the jury charge is misleading or gives an inadequate understanding of the law. Lewis, 899 F.2d at 456. We review the denial of a new trial for abuse of discretion. Moran v. Johns-Manville Sales Corp., 691 F.2d 811, 816 (6th Cir.1982).
 
 
 17
 The district court instructed the jury that the parties had stipulated to certain facts that it therefore must accept as proven. The court then read the facts to the jury. Fact number 8 asserted that the commission agreement "provided for the payment of commissions by Durham Life Insurance Company to Harold Hodson during the life of Harold Hodson, plus twelve months." Tr. Vol. IV at 75.
 
 
 18
 Durham raised a two-fold objection to the court's instruction on stipulations. First it complained that the parties had not entered into stipulations, for the facts read were the "Uncontraverted [sic] Facts" listed in the final pre-trial order. Second, it complained that fact number 8 would lead the jury to infer that a lifetime contract existed. The court agreed that technically the facts read were uncontroverted rather than stipulated ones but pointed out that Durham had agreed earlier to the underlying facts. Nonetheless, the court withdrew the challenged instruction, including the facts themselves, except for Hodson's birthdate. The court also physically removed the uncontroverted facts from the written instructions it provided for the jury to use during deliberations. Durham repeatedly voiced its agreement with this solution and made no further requests or objections to the jury charge. Tr. Vol. IV at 106-09.
 
 
 19
 On appeal, Durham now complains that the district court's remedy was inadequate. But a party cannot claim error from a jury instruction to which it did not object below. Fed.R.Civ.P. 51; Gillentine v. McKeand, 426 F.2d 717, 723 (1st Cir.1970). See note 2 supra. Durham raised no objection to the district court's corrected charge and, therefore, has not preserved the issue for appeal.
 
 
 20
 Additionally, if prejudice did ensue despite the correction, Durham has only itself to blame. As the district court noted, Durham had agreed to the language used in fact number 8 by signing the pre-trial order. Durham made no objection to the order, nor was it modified. The order thus "control[led] the subsequent course of the action." Fed.R.Civ.P. 16(e). Nonetheless, when Durham belatedly realized its mistake, the court generously released Durham from the pre-trial order by repudiating the uncontroverted facts and issuing an amended instruction of which Durham approved. Because Durham invited the final jury charge, it cannot complain on appeal that the charge was erroneous. See Harvis v. Roadway Express, Inc., 923 F.2d 59, 60 (6th Cir.1991) (party inviting error cannot later rely on it for relief).
 
 
 21
 In any event, Durham has not demonstrated that the charge misled the jury.[3] We review jury instructions as a whole to determine whether they adequately advised the jury of the legal considerations necessary to reach a verdict. Beard v. Norwegian Caribbean Lines, 900 F.2d 71, 72 (6th Cir.1990). Elsewhere in its instructions, the court clearly explained the differing contentions of the parties regarding the duration of the commission agreement. It also properly placed the burden of proof on Hodson to show that the parties intended to form a lifetime contract. Tr. Vol. IV at 92-94. With these instructions, and the district court's prompt remedial action, it is unlikely that the jury was misled by the reading of the uncontroverted facts. The district court, therefore, did not abuse its discretion in denying Durham a new trial.
 
 IV.
 
 22
 Finally, Durham contends that the evidence does not support the award of damages. Hodson introduced evidence that, from October 1988 through January 1989, he received $41,813.73 in commissions. Pltf. Exh. 21. Durham argues that Hodson presented no evidence from which to compute his commissions after January 1989. Because the jury awarded Hodson $500,000, Durham insists that the jury was swayed by passion or prejudice to grant punitive damages to Hodson, despite an express instruction to award only compensatory damages.
 
 
 23
 A jury's verdict will not be overturned as excessive if it falls within the range of proof. American Anodco, Inc. v. Reynolds Metals Co., 743 F.2d 417, 423 (6th Cir.1984). In this case, the district court found that the evidence supported the jury award. We review the court's determination for abuse of discretion. Agristor Leasing v. A.O. Smith Harvestore Products Inc., 869 F.2d 264, 268 (6th Cir.1989).
 
 
 24
 In reaching its decision, the district court considered evidence presented by both parties regarding damages. Michael Cuscaden, the president of Durham, testified that, based on cases that had been Hodson's, Hodson would have received $175,000 in commissions from March 1989 through December 1991.[4] Tr. Vol. III at 95. Cuscaden also testified that, by the date of trial, Hodson's monthly commissions totalled $4,200. Tr. Vol. I at 123. Hodson testified that he had a lapse ratio[5] of approximately 17.5%. Tr. Vol. II. at 35. He also introduced an actuary table which indicated that, in 1986, he had a life expectancy of approximately 19 years. See Pltf.Exh. 25. Based on this information, the district court calculated damages in excess of $400,000. The court thus concluded that the jury award was not excessive or punitive.
 
 
 25
 We are satisfied that the jury award is supported sufficiently by the evidence. The difference between the jury award and the district court's calculation is readily explained. The jury may have based its computation on Hodson's monthly commission total of $9,500 at the time of his termination in January 1989. See Tr. Vol. I at 134; Tr. Vol. II at 34. It may have inferred that, had Hodson continued to write new policies, he would have earned additional commissions and bonuses, as he had in the years preceding his termination. In 1985 alone, Hodson had earned a bonus exceeding $40,000. Tr. Vol. III at 81. In light of this evidence, the jury award is not so excessive as to shock our conscience. See Matulin v. Village of Lodi, 862 F.2d 609, 614-15 (6th Cir.1988) ("A damage award cannot be overturned unless it is so disproportionately large as to 'shock the judicial conscience.' ") (citation omitted). We therefore conclude that the district court did not abuse its discretion in finding the jury award reasonable.
 
 
 26
 Affirmed.
 
 
 
 *
 Honorable Frank M. Coffin, Senior Circuit Judge, United States Court of Appeals for the First Circuit, sitting by designation
 
 
 [1]
 The abundance of evidence supporting the verdict also assures us that the district court did not abuse its discretion in denying a new trial on this ground. See Moran v. Johns-Manville Sales Corp., 691 F.2d 811, 816 (6th Cir.1982)
 
 
 [2]
 Durham also argues that it had cause to terminate the commission agreement due to Hodson's actions in establishing a competing insurance agency and, therefore, that the district court erred in denying judgment as a matter of law. We need not address this argument because we uphold the jury's finding of a lifetime contract. Moreover, the jury did not reach the question of cause to terminate because the district court instructed it to consider the issue only if it found that Hodson had not entered a lifetime contract. Durham did not object to this instruction and cannot appeal it now. See Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.1988) (appellate court ordinarily does not decide matters presented for the first time on appeal)
 
 
 [3]
 The only prejudice Durham claims is that the erroneous instruction inflamed the jury to award Hodson $500,000. As we discuss in Section IV infra, this award is reasonable, given the jury's finding of a lifetime contract
 
 
 [4]
 Cuscaden in fact testified that this figure represented commissions Hodson would have received through the end of 1992. Tr. Vol. III at 95. Cuscaden, however, had just testified that he had calculated Hodson's potential earnings from March 1989 through 1991. Id. at 94-95. As the trial occurred in January 1992, we are confident that Cuscaden merely misspoke the terminal point of his calculation and meant that he had calculated Hodson's earnings through the end of 1991
 
 
 [5]
 A lapse ratio is the yearly percentage that an agent's caseload decreases due to the non-payment of premiums. Tr. Vol. II at 35