**Arthur F. VINE, Personal Representative for the Estate of Richard A. Vine, Plaintiff,**

v.

**COUNTY OF INGHAM, Ingham County Sheriff's Department, Sheriff Gene L. Wriggelsworth, Deputy Richard Whitmore, Deputy Paramedic Steven Maier, individually and as agents of the County of Ingham and Ingham County Sheriff's Department, jointly and severally; City of Lansing, City of Lansing Police Department, Jerome Boles, Chief of Police, Officer David Prentler, Detention Officer David Benson, Detention Officer Jennifer Freeman, Detention Officer Kevin Moore, Sergeant Kenneth Ruppert, Sergeant Thomas Wright, individually and as agents of the City of Lansing and the Lansing Police Department, jointly and severally, Defendants.**

No. 5:93–CV–155.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 3, 1995.

Plaintiff's Motion for Reconsideration
Denied Feb. 27, 1995.

Geoffrey N. Fieger, Fieger, Fieger & Schwartz, Southfield, MI, Ronald M. Bahrie, Lansing, MI, for plaintiff.

James S. O'Leary, Denfield, Timmer, Jamo & O'Leary, Lansing, MI, for city defendants.

Patrick A. Aseltyne, Johnson, Rosati, Galica & Shifman, Lansing, MI, for county defendants.

## OPINION OF THE COURT

McKEAGUE, District Judge.

This case presents various state and federal claims growing out of the death of Richard A. Vine while in police custody. Now before the Court are several motions by defendants for dismissal or for summary judgment.

## I. FACTUAL BACKGROUND

On January 7, 1992, at approximately 10:45 a.m., defendant Deputy Richard Whitmore, of the Ingham County Sheriff Department, arrived at the home of Virginia Gardner in Williamston in response to a "disorderly person" complaint. Deputy Whitmore encountered Richard Vine, said to have been causing a disturbance. Vine complained to Whitmore of stomach pain and allegedly told Whitmore that he had ingested methyl alcohol. Whitmore apparently did not know what methyl alcohol is.[1]

At this time, defendant Ingham County Sheriff Deputy/Paramedic Steven Maier arrived. Vine asked to be taken to a hospital. Maier called for an ambulance. In the meantime, Vine apparently refused to cooperate with Maier's attempts to determine his physical condition. He also apparently refused to accept ambulance transportation to the hospital, saying he could not afford it. Vine was placed under arrest on two outstanding City of Lansing arrest warrants, for nonpayment of traffic violation fines. Maier then ob-

---

1. Methyl alcohol is an ingredient of windshield wiper fluid, which Vine had apparently ingested in a desperate attempt to impress Ms. Gardner.

tained telephonic authorization from Dr. Joe Bustamante, M.D., at Ingham County Medical Center, to forgo examination by a physician before detaining him.

Whitmore transported Vine in his patrol car to Lansing, where custody was transferred to City of Lansing Police Officer David Prentler. Prentler transported Vine to the city lock-up for detention without medical examination. At booking, Vine appeared to be intoxicated. Although he reported to Prentler that he had ingested methyl alcohol, no special precautions were taken. Ostensibly because Vine was somewhat belligerent and because he was believed to have previously attempted suicide, Vine was placed in handcuffs, in a maximum security plexiglass-lined observation cell at approximately 12:02 p.m.

There he fell asleep or "passed out" on the floor and remained motionless for several hours. Defendant Officers David Benson, Jennifer Freeman, Kevin Moore and Sergeant Kenneth Ruppert visually checked Vine periodically, observing no change in his condition. At approximately 5:35 p.m., Moore and Ruppert observed mucous or vomit coming from Vine's nose or mouth. When they rolled him over to remove the handcuffs, his head jerked and struck the wall or floor, causing a one-inch laceration above his eyebrow, but he did not awaken. Vine was left on the floor, face down and motionless. No medical attention was obtained until about 7:38 p.m., when Vine was transported to Sparrow Hospital in a comatose condition. He died shortly thereafter.

This action followed. The complaint contains six counts. (I) All defendants are alleged under 42 U.S.C. § 1983 to have deprived Vine of his right to freedom from cruel and unusual punishment, secured by the Eighth and Fourteenth Amendments. (II) Defendants Moore and Ruppert are alleged to have committed an assault and battery upon Vine when they injured his head while rolling him over. (III) All defendants are alleged to have been grossly negligent in

their treatment of Vine, causing his death. (IV) Defendant Whitmore is alleged to have obstructed justice by falsifying a police report in connection with Vine's arrest. (V) Plaintiff seeks a declaratory judgment to the effect that the City of Lansing has violated state law by failing to appoint an advisory board to oversee the operation of the city lock-up. (VI) Defendants Ingham County, Ingham County Sheriff Department, Sheriff Gene Wriggelsworth and Deputy Steven Maier are alleged to have engaged in gross negligence or willful misconduct, in violation of the Emergency Medical Service Act, M.C.L. § 333.20901 *et seq.*

Defendants' motions for dismissal or for summary judgment challenge only certain aspects of these claims. Having duly considered the parties' briefs and heard oral arguments, the Court ruled from the bench on several issues raised by the motions. In accordance with those rulings, the following actions have been taken. First, to the extent the claim contained in count I asserts rights under the Eighth Amendment, it has been dismissed. Richard Vine, as a pretrial detainee, is protected from deliberate indifference to serious medical needs not under the Eighth Amendment, but under the Due Process Clause of the Fourteenth Amendment. Because there is no material difference in the governing substantive law, however, the count I claim goes forward as though explicitly premised on the Due Process Clause. Second, the claim contained in count IV for obstruction of justice has been dismissed in its entirety with plaintiff's consent. Third, the count V claim for declaratory relief has been dismissed with plaintiff's consent. Further, by subsequent stipulation of the parties, all claims against defendant Whitmore have been dismissed. The Court now addresses those issues raised by defendants' dispositive motions which remain unresolved.[2]

## II. COUNTY DEFENDANTS' MOTION

The "County defendants" include the County of Ingham, the Ingham County Sher-

---

2. Since the hearing, plaintiff has submitted two supplemental exhibits in opposition to defendants' motions. Defendants have objected to both.

 The first exhibit is entitled "January 7, 1992 *Chronology of Events,*" and was apparently pre-

pared by plaintiff's counsel. It was filed on December 27, 1994. It is merely a fact summary that ought to have been incorporated into plaintiff's briefs in opposition to defendants' motions. It has no evidentiary value and is not a proper exhibit within the contemplation of Fed.R.Civ.P.

iff Department, Sheriff Wriggelsworth and Deputy Maier. Their motion challenges plaintiff's claims in several respects.

### A. Suability of Ingham County Sheriff Department

■ Defendants contend the Ingham County Sheriff Department is not a legal entity subject to suit. Indeed, this Court, the Honorable Douglas W. Hillman, reached the same conclusion in *Hughson v. County of Antrim*, 707 F.Supp. 304, 306 (W.D.Mich. 1988):

> Michigan is a jurisdiction in which the sheriff and prosecutor are constitutional officers, and there does not exist a sheriff's department or prosecutor's office. Instead the sheriff and the prosecutor are individuals, elected in accordance with constitutional mandates. Mich. Const. art. 7, § 4. Since the sheriff's department and the prosecutor's office do not exist, they obviously cannot be sued.

The *Hughson* ruling is consistent with *Bayer v. Macomb County Sheriff*, 29 Mich.App. 171, 175, 180, 185 N.W.2d 40 (1970), where the Michigan Court of Appeals summarily concluded that the Macomb County Sheriff Department was simply an agency of the county, not a separate legal entity.

Plaintiff has presented no contrary authority. The Court finds *Hughson* and *Bayer* persuasive. Accordingly, the Ingham County Sheriff Department will be dismissed as a party in this action.

### B. Liability of County and Sheriff for Actions of Maier and Whitmore Taken Pursuant to Policy or Custom

■ Defendants Ingham County and Sheriff Wriggelsworth challenge the § 1983 claim presented in count I under Fed. R.Civ.P. 12(b)(6) and 56. The County and Sheriff Wriggelsworth were not active participants in the alleged wrongdoing. Yet, respondeat superior or vicarious liability does not attach under § 1983. *City of Canton, Ohio v. Harris* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989). Ingham County cannot be liable for the actions of its agents, Deputies Maier and Whitmore, unless their actions were taken pursuant to county policy and were, therefore, the actions of the County. *Id.*

■ Similarly, Sheriff Wriggelsworth cannot be liable unless he "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hicks v. Frey*, 992 F.2d 1450, 1455 (6th Cir.1993). At a minimum, plaintiff must show that Sheriff Wriggelsworth "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct" of the offending deputies. *Id.* Liability cannot be based solely on the right to control employees. *Id.*

■ Failure to provide proper training may represent a policy for which the policymakers are liable where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [County] can reasonably be said to have been deliberately indifferent to the need." *Canton, supra*, 489 U.S. at 390, 109 S.Ct. at 1205. The focus must be on "adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* If a deficiency is identified, then plaintiff still must prove that the deficiency is "closely related to the ultimate injury," i.e., "that the deficiency in training actually caused the police officers' indifference to

---

56. It is rejected as untimely supplemental argument and is given no consideration in the Court's analysis.

The second exhibit is the transcript of the deposition of one of plaintiff's expert witnesses, Frederick Postill, taken on January 18, 1995. Though Mr. Postill's testimony is related to matters placed at issue by defendants' motions several months ago, plaintiff offers no explanation for the late taking of the deposition. Plaintiff has

not shown good cause for the late filing of the exhibit. Nonetheless, to adjudicate the pending motions without considering the deposition would be to invite a motion to alter or amend the judgment based on newly discovered evidence. To avoid needless multiplication of proceedings, and because the Court concludes defendants are not materially prejudiced, the Court does consider the Postill deposition in the following analysis.

[Vine's] medical needs." *Id.,* at 391, 109 S.Ct. at 1206.

Plaintiff does not contend that Whitmore and Maier acted pursuant to any formal policy when they arrested Richard Vine and took him into custody without first ascertaining his medical condition. Plaintiff's theory is that Whitmore and Maier acted with deliberate indifference to Vine's serious medical needs *because* neither the County nor the Sheriff had established a policy or had provided adequate training that would have directed the deputies' discretion.

■ The pertinent language of count I alleges Richard Vine's civil rights were violated by the following wrongful acts of defendants:

a. Failure to train deputies, paramedics, detention officers in the proper use of determining medical emergencies such omitted training was a grossly negligent and reckless act [sic].

. . . .

d. Knowingly and recklessly hiring and training as deputies, paramedics, police officers, and detention officers individuals who are not able to determine medical emergencies that render them unfit to perform the necessary duties of their position.

. . . .

f. Failure to adequately train officers to recognize a medical emergency.

. . . .

l. That all officials and supervisors failed to institute a suicide prevention system, failed to train individual officers in a suicide prevention system and failed to adequately supervise detention officers.[3]

The last of these allegations applies only to City of Lansing defendants. Thus, the failure to train claim against the County defendants essentially alleges inadequate training with respect to recognition of medical emergencies. Under *Canton,* "the inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to

the rights of persons with whom the police come into. contact." *489 U.S. at 388,* 109 S.Ct. at 1204.

■ First, the County argues that plaintiff has failed to state a claim against it, because it has no authority to establish policy for the operations of the Sheriff or his deputies. The argument is not without support. See *Kroes v. Smith,* 540 F.Supp. 1295, 1298 (E.D.Mich.1982) (finding that because the sheriff, not the county, establishes policy, the county could not be liable for actions of deputies taken pursuant to such policy). The better view, however, is reflected in *Marchese v. Lucas,* 758 F.2d 181, 188–89 (6th Cir. 1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987), where the county was held subject to liability and was a properly named party where the sheriff was sued in his official capacity for failure to train. See also *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1248 (6th Cir.1989), *cert. denied,* 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990), (following *Marchese* ); *Parker v. Williams,* 855 F.2d 763, 771 (11th Cir.1988) (following *Marchese,* rejecting *Kroes*); *Gibson v. City of Clarksville, Tenn.,* 860 F.Supp. 450, 458 (M.D.Tenn.1993). Thus, under *Marchese,* although the County cannot be liable under respondeat superior for county law enforcement policies established by the Sheriff, the Sheriff, when sued in his official capacity, *is* the County. The County is, therefore, properly named a defendant in this case. The County's motion to dismiss on this ground will be denied.

■ Sheriff Wriggelsworth also challenges count I, but under Rule 56. He contends there is no genuine issue of material fact and he is entitled to judgment as a matter of law because Deputies Maier and Whitmore were required to complete adequate training and did satisfactorily complete the same. The Sheriff presents proof that both deputies completed the training approved by the Michigan Law Enforcement Officer Training Council pursuant to M.C.L. § 28.609. Also presented are the records of

---

**3.** Although count I purports to be based also on "negligent hiring" and "negligent supervision" practices, the Court was informed by counsel at the hearing that plaintiff has abandoned his reliance upon those theories. They are given no further consideration.

substantial in-service training that both deputies have received since 1980, including paramedic training (Maier only), first aid training (Whitmore only), and hazardous material training. In fact, it appears Maier's training even included instructions on the treatment of persons who have ingested methyl alcohol. Wriggelsworth contends this evidence conclusively refutes (1) plaintiff's bald allegation of an unconstitutional policy; and (2) plaintiff's argument that he deliberately and consciously adopted a policy or custom evidencing deliberate indifference to the rights of Ingham County inhabitants.

In view of the training records submitted, it can hardly be said that the inadequacy of the training was so obvious and the likelihood of a constitutional violation so great that the Sheriff could reasonably be deemed to have been deliberately indifferent to the need for more or better training. Consider the following language from *City of Canton v. Harris:*

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . . It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

489 U.S., at 390–91, 109 S.Ct., at 1206 (citations omitted).

◼ Thus, that Maier and Whitmore were arguably negligent when they took Vine into custody without first ascertaining his medical condition is not enough, in itself, to create a question of fact regarding the adequacy of their training. The unrefuted evidence shows that they received substantial relevant training. Whether the training was the best or most comprehensive available has no bearing on the plaintiff's failure to train claim. See *Lewis v. City of Irvine,* 899 F.2d 451, 455 (6th Cir.1990).

Sheriff Wriggelsworth has satisfied his initial burden by pointing out that plaintiff, having had sufficient opportunity for discovery, has presented no evidence to support his failure to train claim. See *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). In response, plaintiff cannot merely rest on his pleadings. Fed.R.Civ.P. 56(e). Plaintiff "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1389 (6th Cir. 1993).

◼ Plaintiff relies on the deposition testimony of Undersheriff Rick Boyd to the effect that the County had no policy for treatment of persons who had ingested methyl alcohol. Yet, this testimony is not significant—that is, does not create a genuine issue of material fact—absent some evidence that methyl alcohol ingestion was a recurring problem, of which the Sheriff was aware. Sheriff deputies, in the discharge of their crime control and public safety duties, necessarily encounter an infinite variety of conflicts, crises and emergency situations which, due to their uniqueness, inevitably defy management through established policies. Under *Canton,* a failure to establish a policy and/or train deputies with respect to particular injury-causing conduct rises to the level of deliberate indifference only if the conduct represents a "usual or recurring situation" with which deputies must deal.

Discovery having now been completed, plaintiff can be expected to have adduced some evidence supporting the claim of deliberate indifference by Sheriff Wriggelsworth. Such evidence might take the form of a recent history of similar errors by sheriff

deputies or sociological or medical studies on the frequency of and symptoms associated with methyl alcohol ingestion. Plaintiff has presented nothing of the sort. Undersheriff Boyd's testimony, standing alone, does not suffice. It would not justify a reasonable jury in finding in his favor on this claim.

Plaintiff has not carried his burden in response to the properly supported motion for summary judgment. It follows that there is no genuine issue of material fact and that Sheriff Wriggelsworth is entitled to judgment in his favor on count I. Further, insofar as the count I claim against the County is premised on the Sheriff's alleged failure to train, the County, too, is entitled to summary judgment on this § 1983 claim.

## C. Gross Negligence

In count III, plaintiff alleges defendants are liable under state law for gross negligence proximately causing Richard Vine's death. Defendants Ingham County and Sheriff Wriggelsworth challenge the claim on the basis of governmental immunity.

 With respect to the County's liability, Michigan's Governmental Tort Liability Act provides in pertinent part as follows:

> Except as otherwise provided in this act, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function.

M.C.L. § 691.1407(1). The County is a "governmental agency" as defined at M.C.L. § 691.1401(b) and (d). Plaintiff concedes

that the actions for which the County is allegedly liable were taken in the exercise or discharge of a governmental function. It necessarily follows that, barring the existence of an applicable statutory exception to M.C.L. 691.1407(1),—and none is applicable—the County is immune from all tort liability.

 With respect to Sheriff Wriggelsworth's liability for gross negligence, the Act provides:

> Judges, legislators and the elected or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damages to property whenever they are acting within the scope of their judicial, legislative or executive authority.

M.C.L. § 691.1407(5). Sheriff Wriggelsworth is an elected official in county government, covered by this subsection 5. Plaintiff's argument that subsection 2 applies, excepting grossly negligent conduct from immunity, is faulty.[4] Subsection 2 begins with the words, "Except as otherwise provided in this section,...." Subsection 5 is a provision of § 1407 which more specifically describes the immunity of a higher level official like the Sheriff. It is more specifically applicable than subsection 2, which clearly pertains to lower level officials and employees not covered by subsection 5. Thus, to the extent Sheriff Wriggelsworth is alleged to be liable because his failure to better train Deputies Whitmore and Maier was the product of gross negligence, he, too, is immune from liability.[5]

4. Subsection 2 provides:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she

is acting within the scope of his or her authority.
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

5. Moreover, to the extent Sheriff Wriggelsworth's alleged liability is premised on respondeat superior, a theory which plaintiff disclaims, he is also immune from liability pursuant to M.C.L. § 51.70: "A sheriff shall not be responsible for

Accordingly, the count III claims against the County and Sheriff Wriggelsworth will be dismissed under Fed.R.Civ.P. 12(b)(6).

### D. Liability Under the Emergency Medical Services Act

■ Count VI, in the first amended complaint, alleges Deputy Maier was grossly negligent in rendering emergency medical services to Richard Vine. Plaintiff alleges the County and the Sheriff are vicariously liable therefor. The County and the Sheriff move for dismissal contending they are immune from such liability.

Plaintiff contends the immunity defendants would otherwise have enjoyed has been abrogated by the Emergency Medical Services Act ("EMSA"), M.C.L. § 333.20965.[6] Pursuant to the EMSA, emergency medical personnel are immune from liability for injury they cause to a patient during the rendition of emergency medical services unless the injury-causing act or omission was the result of gross negligence or willful misconduct. Plaintiff contends, therefore, that Deputy Maier is not immune from liability if he is found to have been grossly negligent and that the County and Sheriff are vicariously liable under respondeat superior.

■ Plaintiff's position ignores the plain language of subsection 2 of § 20965, which preserves preexisting immunities. Among these are the immunities which the County and Sheriff enjoy under M.C.L. § 691.1407 and M.C.L. § 51.70, *supra.* The

the acts, defaults, and misconduct in office of a deputy sheriff."

**6.** Section 20965 provides:

(1) Unless an act or omission is the result of gross negligence or willful misconduct, the acts or omissions of a medical first responder, emergency medical technician, emergency medical technician specialist, paramedic, or medical director of a medical control authority or his or her designee while providing services to a patient outside a hospital, or in a hospital before transferring patient care to hospital personnel, that are consistent with the individual's licensure or additional training required by the local medical control authority do not impose liability in the treatment of a patient on those individuals or any of the following persons:

latter statute explicitly immunizes the Sheriff from vicarious liability for the acts or misconduct of his deputies. Further, a governmental agency like the County is vicariously liable "only when its officer, employee, or agent, acting during the course of employment and within the scope of authority, commits a tort while engaged in an activity which is nongovernmental or proprietary, or which falls within a statutory exception." *Ross v. Consumers Power Co. (On Reh.),* 420 Mich. 567, 592, 625, 363 N.W.2d 641 (1984). Here, because Deputy Maier was indisputably involved in a governmental activity which does not fall within a statutory exception, the County is clearly immune from vicarious liability under M.C.L. § 691.1407. *Id.*

The Court rejects plaintiff's argument that these immunities are abrogated by the EMSA. The argument is based on decisions which construed the EMSA before the Michigan Legislature added subsection 2 to § 20965. See *Jennings v. Southwood,* 446 Mich. 125, 521 N.W.2d 230 (1994); *Malcolm v. East Detroit,* 437 Mich. 132, 468 N.W.2d 479 (1991). Legislative intent having now been clarified, and the language of subsection 2 being unambiguous, it is clear that the EMSA leaves the County's and Sheriff Wriggelsworth's immunities intact. The count VI claim against them will be dismissed.

### E. Conclusion

In sum, based on the foregoing analysis, defendant Ingham County Sheriff Depart-

(a) The authorizing physician or physician's designee.
(b) The medical director and individuals serving on the advisory body of the medical control authority.
(c) The person providing communications services or lawfully operating or utilizing supportive electronic communication devices.
(d) The life support agency or an officer, member of the staff, or other employee of the life support agency.
(e) The hospital or an officer, member of the staff, nurse, or other employee of the hospital.
(f) The authoritative governmental unit or units.
(g) Emergency personnel from outside the state.
(2) Subsection (1) does not limit immunity from liability otherwise provided by law for any of the persons listed in subsection (1).

ment will be dismissed as a party in this action and all the remaining claims against defendants Ingham County and Sheriff Wrigglesworth, contained in counts I, III and VI will be dismissed under either Rule 12(b)(6) or Rule 56.

### III. CITY DEFENDANTS' MOTION

The "City defendants" include the City of Lansing, the City of Lansing Police Department, Police Chief Jerome Boles, Officer David Prentler, Officer David Benson, Officer Jennifer Freeman, Officer Kevin Moore, Sergeant Kenneth Ruppert and Sergeant Thomas Wright. The remaining claims against them are contained in counts I, II and III. The count I claim under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and the count III claim under state law for gross negligence pertain to all of the City defendants. The count II claim for assault and battery pertains only to defendants Moore and Ruppert. The City defendants' motion for summary judgment challenges only counts I and III.

### A. Liability of City of Lansing, Lansing Police Department and Police Chief Boles

The City, its police department and its police chief are all said to be liable under count I, not because they were actively involved in the events that led to Richard Vine's death on January 7, 1992, but because they failed to establish policies and failed to adequately train the other defendant officers concerning medical emergencies and suicide prevention. The pertinent allegations are set forth, *supra*, at p. 1159. Defendants challenge the claim under the standards established in *Canton v. Harris, supra*, contending plaintiff is unable to show they were deliberately indifferent to the need for more training. Defendants have presented copies of city policies and procedures for detention of incapacitated persons, use of restraint devices, suicide prevention training materials, and training records of all defendant officers.

In response, plaintiff does not challenge the completeness of the policies or training materials. He has not shown that the Lan-

sing Police Department policies failed to meet any established and generally accepted detention center standards. He has not presented expert testimony exposing weaknesses in the policies or training materials. Instead, he points to deposition excerpts indicating that several of the defendant officers were not knowledgeable about City lock-up policies and procedures for detention of incapacitated persons. Plaintiff argues the deposition testimony evidences an atmosphere of confusion and lack of knowledge, suggesting training has been deficient. Plaintiff's position finds support also in the opinion of former Washtenaw County Sheriff Frederick Postill that the detention officers should have received more formal training. Again, however, the question is not simply whether the training was deficient, but whether the evidence is sufficient to create a question of fact as to whether "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390, 109 S.Ct. at 1205.

First, it must be recognized that the only legitimate basis for plaintiff's deliberate indifference claim is defendants' alleged mistreatment of an incapacitated person. No evidence has been presented suggesting that Richard Vine ingested an alcoholic substance, that appeared to render him intoxicated, with intent to take his own life. The City defendants took suicide prevention precautions because his booking history revealed a prior suicide attempt. Thus, the precautions taken were reasonably intended to protect Vine from self-destructive behavior while detained, not from the consequences of precustodial conduct. There is no evidence to support the theory that Vine's death was caused by defendants' failure to employ proper suicide prevention precautions. To the extent plaintiff's count I claim is based on such a theory, all defendants are clearly entitled to summary judgment in their favor.

A closer question is posed by plaintiff's claim that Vine was mistreated as an incapacitated person. The relevant portions

of Lansing Police Department Operation Procedures [7] may be summarized as follows:

A prisoner is "incapacitated" if, as a result of the use of alcohol, he is unconscious or his mental or physical functioning is so impaired that he poses an immediate and substantial danger to his own health and safety.

A prisoner who is incapacitated and unconscious and cannot be aroused by reasonable efforts shall be considered a medical emergency and shall be transported to a hospital or medical care facility.

A prisoner who is restrained with handcuffs to prevent harm to himself or others shall be checked as often as is necessary for the protection of the restrained prisoner.

Again, plaintiff does not challenge the adequacy of these procedures. He contends defendant officers' lack of familiarity with them and the failure to adhere to them are the products of inadequate training. Yet, even assuming better training would have resulted in better informed and more competent detention officers and that closer adherence to the procedures might have resulted in earlier medical attention for Richard Vine, saving his life, there is no evidence that the City policymakers knew or should have known that training was deficient. Plaintiff has presented no evidence that there had been other similar incidents of neglect of detainees' medical needs in the Lansing lock-up of which City policymakers should have been aware. Neither has plaintiff shown that the City policymakers knew or should have known of the alleged "confusion" among detention officers.

Moreover, "confusion" is hardly an accurate characterization of the deposition excerpts relied on by plaintiff. Prentler testified that he received no formal training, but only on-the-job training, as to the duties and responsibilities of a detention officer. Benson did not recall a specific regulation gov-

---

**7.** The text of the relevant portions:

II. INCAPACITATED PERSON

A. "Incapacitated" means that an individual, as a result of the use of alcohol, is unconscious or has his or her mental or physical functioning so impaired that he or she either poses an immediate and substantial danger to his or her own health and safety or is endangering the health and safety of the public. (MCL 333.6104(3))

B. Officers must realize that a person may be incapacitated for reasons other than intoxication. Unconsciousness may be an indication of a medical problem or emergency. In all cases where the unconscious person cannot be aroused by the reasonable efforts of the officer to a level of consciousness where the officer can communicate with the subject, the officer shall consider the subject's condition to be a medical emergency.

C. It is the policy of the Lansing Police Department that every incapacitated person who is unconscious or seriously injured to the extent that medical treatment is necessary *shall be transported to a hospital or emergency service facility in an ambulance,* unless the ambulance attendant specifically refuses to transport the person, or the ambulance otherwise fails to respond.

. . . .

VIII. DETENTION RESPONSIBILITY FOR INCAPACITATED PERSONS

A. If a person has been delivered to the third floor detention area and the detention officer determines that the person is in an incapacitated condition, or if a person becomes incapacitated once they are incarcerated, the person shall be transported to a hospital or emergency care facility in an ambulance or as otherwise provided in Section V. The detention officer shall be responsible for notifying the Communications center for the request of an ambulance. The detention officer shall also notify a sworn supervisor of the situation. The field supervisor's responsibility shall be the same as outlined in Section VII.

B. Section VIII(A) does not apply if the person is under arrest and has already been denied admittance to a hospital or emergency care facility, provided the person's condition has not deteriorated since the hospital refused admittance.

O.P. 87–98, "Incapacitated Persons," pp. 1, 3.

V. USE OF RESTRAINT DEVICES IN THE DETENTION FACILITY

. . . .

C. Conditions under which restraint devices may be applied are:

1. As a precaution against escape or assaultive behavior while the prisoner is in protective custody.

2. To prevent prisoners from harming themselves or others.

3. To prevent damage to police department property.

D. The restrained prisoner shall be checked as often as is necessary for the protection of the restrained prisoner.

. . . .

O.P. 79–1, "Detention of Adults/Juveniles," p. 3.

erning the use of handcuffs, but understood, consistent with policy, that they are used to restrain detainees who represent a danger to others and that the restrained person is thereafter checked at indeterminate intervals. Freeman testified she was not sure whether there was an established procedure regarding use of handcuffs, but knew that the use of handcuffs was to be documented and that the restrained person was to be checked periodically. Freeman also could not remember the policy or procedure governing treatment of intoxicated persons, but knew that incapacitated persons were to be sent to the hospital. Similarly, Moore recalled that the governing policy and procedure required that persons in restraints be checked as often as needed and that incapacitated persons be taken to the hospital.

Considering the deposition excerpts presented by plaintiff, the detention officers do not appear to have been "confused" about their responsibilities toward restrained and incapacitated detainees. While they did not recall the specific requirements of the operation procedures, their understanding of their responsibilities appears to have been generally consistent with the procedures. Their unfamiliarity with the written procedures does not reflect such a glaring deficiency as to necessarily render the need for better training obvious to the City policymakers. Neither is their unfamiliarity such a glaring deficiency as would likely result in the violation of constitutional rights.

Accordingly, the Court concludes plaintiff has failed to present evidence upon which a reasonable jury could conclude that the City, Lansing Police Department ("LPD") and Chief Boles were deliberately indifferent to the need for better training in the treatment of incapacitated detainees. There is no genuine issue of material fact; these three defendants will be awarded summary judgment with respect to the § 1983 claim in count I.

The City, LPD and Chief Boles have not challenged the count III state law claim against them for gross negligence.[8]

**B. Liability of Individual Officers: General Standards**

The standards governing plaintiff's count I claim against the individual LPD officers are summarized as follows:

> Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Pretrial detainees are analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 545 [99 S.Ct. 1861, 1877, 60 L.Ed.2d 447] (1979); *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985).
>
> . . . .
>
> Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir.1988). However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. *Id.; Roberts,* 773 F.2d at 724. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. *Danese v. Asman,* 875 F.2d 1239, 1243–44 (6th Cir.1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990).

*Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994). See also *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

The individual defendant LPD officers assert qualified immunity in defense of this claim. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

**8.** All three defendants may enjoy governmental immunity under M.C.L. § 691.1407, but the de-

fense has not been raised and the Court expresses no opinion at this stage.

known." *Harlow v. Fitzgerald,* 457 U.S. 800, 813–18, 102 S.Ct. 2727, 2735–38, 73 L.Ed.2d 396 (1982). A claim against a public official avoids this immunity only if the right alleged to have been violated was "clearly established" in a particularized sense at the time of the complained of conduct. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). That is, the contours of the right must be sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Id.*

The right of pretrial detainees to be free from deliberate indifference to their serious medical needs was clearly established in January 1992. That is, a reasonable officer would have understood that he was violating Richard Vine's constitutional rights if he withheld medical assistance with knowledge that Vine was not merely intoxicated, but was incapacitated by ingestion of a life-threatening substance. It would appear, therefore that defendants are not protected by qualified immunity unless they show that there is no genuine issue of material fact concerning the extent of their knowledge about Vine's condition. Although resolution of qualified immunity is ordinarily a question of law, where, as here, the defendants' knowledge is a critical element of the offense, subjective intent must be considered. *Poe v. Haydon,* 853 F.2d 418, 424, 432 (6th Cir. 1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). The question posed by defendants' motion for summary judgment is whether plaintiff has presented evidence demonstrating that they *knew* of Richard Vine's serious medical needs or of circumstances clearly indicating the existence of such needs, such that their failure to earlier obtain medical assistance can reasonably be deemed to have been the product of "deliberate indifference." See *Danese, supra.*

In count III, the individual defendant officers' conduct is said to constitute gross negligence, proximately causing Vine's death, for which they are liable under state law notwithstanding governmental immunity. M.C.L. § 691.1407(2)(c). The statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern

for whether an injury results." *Id.* Such conduct need only be *a* proximate cause of injury, not the sole proximate cause, to render the actor liable. *Dedes v. Asch,* 446 Mich. 99, 521 N.W.2d 488 (1994).

## C. Officer David Prentler

Officer Prentler is the officer who took custody of Vine on behalf of LPD. He contends plaintiff has failed to present evidence that he was either deliberately indifferent or grossly negligent in his treatment of Vine. Questions of fact remain with respect to both claims against Prentler for two reasons.

First, he frankly admitted in his deposition that, although he suspected there was something more than mere intoxication wrong with Vine, he "assumed" Vine had been examined by a physician and cleared for detention. This assumption was reportedly based on Deputy Whitmore's representation that "the doctor told me just to watch him." Prentler dep., p. 13. Prentler observed that Vine was "holding his stomach" and "seemed to be extremely intoxicated." *Id.,* p. 15. But for Whitmore's representation, Prentler testified, he would have either refused to take Vine into custody or would have taken him directly to the hospital. Nonetheless, Prentler offers no explanation as to why he was so easily satisfied by Whitmore's vague representation and why he asked no questions regarding the cause of Vine's condition.

Second, Prentler admits that during the booking process, Vine told him he had ingested ethyl (or methyl) alcohol. Prentler believed the substance was poisonous, even life-threatening, but apparently made no further inquiry and did not even bother to relay this information to the detention officers.

It appears that Prentler was aware of circumstances suggesting that Vine's condition required medical attention. His failure to make further inquiry or to relay what he had learned to others could reasonably be deemed, based on the present record, to amount to deliberate indifference or gross negligence proximately causing injury. Accordingly, his motion for summary judgment as to counts I and III must be denied.

### D. Officer David Benson

█ Officer Benson received Vine at the LPD lock-up. Breathalyzer test results confirmed that Vine was intoxicated, with a blood-alcohol level that rose to .24. Benson placed Vine in handcuffs because he was uncooperative and in a suicide prevention cell because of his past history. Benson checked on Vine two to four times during the period 12:02 to 2:50 p.m., when his shift ended. Each visual check revealed the same scene: Vine remained motionless, apparently asleep on the cell floor. Benson is said to have been deliberately indifferent and grossly negligent because he did not properly record his observations in the detention log or otherwise convey his knowledge of Vine's condition to other officers.

Benson's conduct is not to be commended. He offers no excuse or explanation for his failure to remove the handcuffs after Vine had fallen asleep or his failure to inform other officers of Vine's condition. However, plaintiff has made no showing or even argument that Benson's nonfeasance proximately contributed to causation of Vine's death. The Court is left to wonder how more competent or more conscientious performance by Benson might have materially improved Vine's later treatment. Benson apparently knew nothing of the methyl alcohol consumption. To have conveyed his impression that Vine was intoxicated and appeared to be "sleeping it off" would have had little impact on subsequent officers' conduct. Further, plaintiff offers no evidence or argument that being restrained in handcuffs exacerbated Vine's condition and hastened his death. And, in any event, the appropriateness of removing the handcuffs should have been self-evident to subsequent officers, independent of any report from Benson.

Plaintiff has failed to present evidence creating a genuine fact issue on the essential element of causation. Plaintiff's implicit hypothetical argument that Vine's death would not have occurred but for Benson's nonfeasance, is insufficient. See *Horn, supra*, 22 F.3d at 659; *Doe v. Sullivan County, Tenn.*, 956 F.2d 545, 550 (6th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 187, 121 L.Ed.2d 131 (1992). This failure, with respect to an essential element of both plaintiff's deliberate indifference and gross negligence claims renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It follows that defendant Benson is entitled to summary judgment in his favor on the claims contained in counts I and III.

### E. Detention Officers Jennifer Freeman and Kevin Moore and Sergeant Kenneth Ruppert

█ Officers Freeman and Moore and Sergeant Ruppert were essentially responsible for Vine's custody from 3:00 p.m. until he was removed to the hospital. They too are charged with deliberate indifference and gross negligence. In addition, Moore and Ruppert are alleged to have committed an assault and battery upon Vine by rolling him over and causing the eyebrow laceration. The latter claim is not expressly challenged in this motion for summary judgment.

Attacking the count I and III claims, defendants contend plaintiff has adduced evidence to the effect only that their conduct was mere negligence at worst. It appears Freeman, Moore and Ruppert made regular visual checks of Vine from 3:00 to 5:15 p.m. Vine's condition appeared to remain unchanged: motionless, asleep. At approximately 5:35 p.m., observing a discharge from Vine's nose and mouth, Moore and Ruppert rolled Vine over to ensure he could breathe and remove the handcuffs. Though Vine's head struck the wall or floor hard enough to cause a one-inch laceration, he did not awaken. Yet, Moore and Ruppert took no action to arouse Vine or otherwise ascertain his condition or need for medical attention. It was not until approximately 7:36 p.m. that Moore recognized that Vine appeared not to be breathing and an ambulance was summoned.

Because these defendants had no knowledge of the methyl alcohol ingestion and because there is no evidence suggesting that the methyl alcohol did result or would have resulted in symptomology different from that of alcoholic beverages generally, their assumption that Vine was simply intoxicated and their failure to make further inquiry can

be characterized only as mere negligence . . . at least until Moore and Ruppert observed that a blow to the head failed to rouse him. This incident should have put them on notice that Vine might have serious needs warranting immediate medical attention. Moore's and Ruppert's failure to take any action in response could reasonably be deemed to amount to deliberate indifference or gross negligence. Accordingly, their motion for summary judgment on counts I and III will be denied. Summary judgment will be awarded to defendant Freeman, however, inasmuch as the evidence against her bespeaks mere negligence only.

### F. Sergeant Thomas Wright

█ Sergeant Wright was the supervisor or administrator at the lock-up on the afternoon in question. He too is alleged to have been deliberately indifferent and grossly negligent. He moves for summary judgment arguing he cannot be liable solely by virtue of respondeat superior. Plaintiff responds by *arguing* that Wright was aware of Vine's observed condition after the roll-over incident, but did nothing. Plaintiff has presented no evidence in support of the argument. Plaintiff has not shown that Wright participated in or implicitly authorized the decision not to seek medical attention. Wright may be liable under § 1983 for his own deliberate indifference and under state law for his own gross negligence, but he is not liable for the misconduct of others solely by virtue of respondeat superior. Because plaintiff has failed to present evidence based upon which Wright could be held liable under either theory, he is entitled to summary judgment on counts I and III.

### G. Conclusion

Accordingly, the City defendants' motion for summary judgment will be granted in the following particulars. Summary judgment on the § 1983 claim contained in count I will be awarded to defendants City of Lansing, Lansing Police Department, Chief Jerome Boles, Officer David Benson, Officer Jennifer Freeman and Sergeant Thomas Wright. Summary judgment on the state law gross negligence claim contained in count III will

also be awarded to defendants Benson, Freeman and Wright. In all other respects, the motion for summary judgment will be denied.

### IV. RECAPITULATION

In the wake of the above rulings, the claims remaining to be adjudicated are as follows: (1) the count I claim for deliberate indifference to serious medical needs against defendants Maier, Prentler, Moore and Ruppert; (2) the count II claim for assault and battery against defendants Moore and Ruppert; (3) the count III claim for gross negligence against defendants Maier, City of Lansing, LPD, Boles, Prentler, Moore and Ruppert; (4) the count IV claims under the EMSA for gross negligence against defendant Maier.

A partial judgment order consistent with this opinion shall issue forthwith.

### PARTIAL JUDGMENT ORDER

In accordance with the Court's written opinion of even date,

**IT IS HEREBY ORDERED** that defendants' motions for dismissal or for summary judgment are **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that the Ingham County Sheriff Department is **DISMISSED** as a party in this action.

IT IS **FURTHER ORDERED** that defendants Ingham County and Sheriff Gene L. Wriggelsworth are **AWARDED SUMMARY JUDGMENT** in their favor on the claim contained in count I, for deliberate indifference to serious medical needs.

**IT IS FURTHER ORDERED** that the claim asserted against the County and Sheriff Wriggelsworth in count III, for gross negligence, is **DISMISSED.**

**IT IS FURTHER ORDERED** that the claim asserted against the County and Sheriff Wriggelsworth in count VI, alleging vicarious liability for Deputy Maier's gross negligence under the Emergency Medical Service Act, is **DISMISSED.**

**IT IS FURTHER ORDERED** that defendants City of Lansing, Lansing Police Department and Police Chief Jerome Boles are

**AWARDED SUMMARY JUDGMENT** in their favor on the claim contained in count I.

**IT IS FURTHER ORDERED** that defendants Officer David Benson, Officer Jennifer Freeman and Sergeant Thomas Wright are **AWARDED SUMMARY JUDGMENT** in their favor on the claims contained in counts I and III.

**IT IS FURTHER ORDERED** that the motions of Officer David Prentler, Officer Kevin Moore and Sergeant Kenneth Ruppert for summary judgment on the claims contained in counts I and III are **DENIED.**